UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ENERSYS DELAWARE INC., | : | |
| | : | |
| Plaintiff, | : | DOCKET NO. _____ |
| v. | : | |
| | : | JURY DEMANDED |
| CHUBB NORTH AMERICAN CLAIMS, | : | |
| | : | |
| Defendant. | : | |

# COMPLAINT

Plaintiff EnerSys Delaware Inc. ("EnerSys") by and through its undersigned counsel, files this Complaint against Chubb North American Claims ("Chubb"), and in support thereof avers as follows:

## INTRODUCTION

1. EnerSys is an industrial technology leader specializing in stored energy solutions, and it manufactures commercial batteries and other power components at, among other locations, its facility at 761 Eastern Bypass, Richmond, KY 40475 (the "Site").

2. In 2018, EnerSys obtained environmental insurance from Chubb covering costs to remediate any historic contamination at the Site, excluding only contamination "associated with" a 100-square-foot pit of asbestos-containing materials (ACM), which was created by a former owner.

3. In September 2020, EnerSys discovered a 15,500-square-foot area on the Site that contained high levels of lead contamination and sought reimbursement from Chubb for costs incurred to remediate that area.

4. Chubb unreasonably and recklessly denied the claim. Contrary to all available evidence, Chubb insisted that the significant lead contamination leached from the much smaller and less-concentrated ACM pit.

5. Chubb's position has forced EnerSys to file this lawsuit in order to obtain compensation to which it is entitled under the Policy.

## PARTIES

6. EnerSys is a stored energy solutions provider headquartered at 2366 Bernville Road, Reading, Pennsylvania 19605.

7. Chubb is an insurance company headquartered at 15 Mountainview Road, Warren, NJ 07059.

## JURISDICTION AND VENUE

8. This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a).

9. Venue is proper pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS

### A. The Site

10. The Site has been the location of industrial and manufacturing operations since at least the 1960s.

11. H.K. Porter, Inc. operated a brake pad and component manufacturing facility on the Site through 1975. At the time of its operations, asbestos was the primary constituent of brake pads.

12. Subsequently, Exide Corporation operated on the Site between 1976 and 1991, where it manufactured industrial lead-acid batteries for power supplies.

13. In 1991, EnerSys' former parent company, Yuasa Battery (America), Inc., purchased the Site from Exide.

14. As part of its acquisition of the Site, Yuasa Battery hired Harding Lawson Associates to perform a Phase I Environmental Site Assessment (the "1991 Phase I ESA").

15. The 1991 Phase I ESA noted the following environmental condition at the Site:

> According to Mr. Earl Price, Facility Engineer, there was a small landfill (approximately 10 foot x 10 foot square, depth unknown) where lead, chromium, and asbestos containing materials were placed behind the facility by the previous owner H.K. Porter.

16. This "small landfill" created by H.K. Porter is hereafter referred to as the "ACM Pit."

17. The Site eventually passed from Yuasa Battery to EnerSys, the current owner.

**B.     The Policy**

18. EnerSys purchased environmental insurance coverage from Chubb for the Site and other locations under the Premises Pollution Liability Insurance Policy, for the period of November 11, 2018 to November 11, 2021 (the "Policy").

19. The Policy requires Chubb to compensate EnerSys for, among other things, "loss" incurred during the policy period resulting from a "pollution condition," which is defined as the "discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant, or pollutant . . . on, in, into, or upon land and structures thereupon[.]"

20. Among the covered types of "loss" are "first-party remediation costs," which are defined to include "expenses incurred to investigate, quantify, monitor, remove, dispose, treat, neutralize, or immobilize 'pollution conditions' . . . to the extent required by 'environmental law' in the jurisdiction of such 'pollution conditions[.]'"

21. Appended to the Policy is a Coverage Limitation and Reopener Endorsement which excludes from coverage "first-party remediation costs"

associated with the "'pollution conditions'…identified in the Schedule of Limited Coverage" provided in the Endorsement, one of which is the following:

> Lead, chromium or asbestos-containing materials in soil or groundwater on, at, under or migrating from the 751 or 761 Eastern Bypass, Richmond, KY 40475 "covered location" associated with the former on-site waste disposal area utilized by the previous property owner as referenced in the 1991 Phase I ESA.

22.   The "on-site waste disposal area . . . referenced in the 1991 Phase I ESA" is the ACM Pit. Thus, lead, chromium or ACM "associated with" the ACM Pit is excluded from coverage under the Policy.

C.   **The Lead Seam**

23.   On September 19, 2019, a fire caused extensive damage to the Site, including environmental harm from the release of sulfuric acid.

24.   In addition, the water used to suppress the fire caused widespread, shallow lead impacts on the Site.

25.   These and other environmental issues resulting from the fire caused Kentucky's Department of Environmental Protection (KDEP) to direct EnerSys to investigate a portion of the Site, prepare a Site Characterization Report, and ultimately remediate the impacted portion of the Site.

26.   During the course of remediation, EnerSys discovered, unrelated to the impacts of the fire, a 15,500-square-foot seam of soil that had extremely high levels of lead (the "Lead Seam").

27. EnerSys notified KDEP of the Lead Seam, and on October 12, 2020, KDEP directed EnerSys to investigate the Lead Seam area and prepare an Additional Site Characterization.

28. EnerSys submitted the Additional Site Characterization on February 22, 2021, as well as a Corrective Action Plan on June 30, 2021, which explained how EnerSys planned to remediate the Lead Seam. Soon thereafter EnerSys began the work.

29. On February 3, 2022, EnerSys submitted a Corrective Action Completion Report, indicating that the Lead Seam had been fully remediated.

30. On February 7, 2022, KDEP issued a No Further Action letter to EnerSys, approving the Corrective Action Completion Report and concluding that no additional remediation was necessary.

D. **The Claim**

31. EnerSys notified Chubb of the Lead Seam on October 13, 2020—one day after receiving KDEP's request for an Additional Site Characterization.

32. In January 2021, EnerSys submitted a claim under the Policy to recover money to be spent to remediate the Lead Seam.

33. Chubb reserved its rights to deny coverage in a January 28, 2021 response, and it reasserted its reservation of rights in a series of letters over the next ten months.

34. EnerSys provided Chubb with copies of its proposed submittals to KDEP relating to the Lead Seam to Chubb for its review and comment, provided Chubb with the opportunity to review and comment on the proposals that EnerSys received from the consultants and contractors who investigated and remediated the Lead Seam in accordance with KDEP's directives, and provided Chubb with the monthly invoices that it received from those contractors and consultants as the investigative and remedial work progressed and was ultimately completed. At Chubb's request, EnerSys also provided access to the Site for the representatives that Chubb sent to oversee the remediation of the Lead Seam.

35. On November 23, 2021, over a year after first being notified of the discovery of the Lead Seam, Chubb denied EnerSys's claim. (*See* Exhibit A). Chubb contended that it had "eliminate[d] any reasonable doubt" that the Lead Seam is "associated with" the ACM Pit and is thus excluded from coverage.

36. Under Pennsylvania law, it is Chubb's burden to prove the existence of a policy exclusion or limitation.

37. Although its reasoning in its November 23, 2021 letter is difficult to follow, Chubb appeared to make two arguments supporting application of the ACM Pit exclusion.

38. The first was that because some brake parts were found in the area of the Lead Seam, Chubb asserted that the Lead Seam was created at the same time as, and therefore "associated with," the ACM Pit.

39. Chubb's second argument suggested, without evidence, that a physical pathway existed between the ACM Pit and the Lead Seam, such that the 100-square-foot ACM Pit leached into a larger area and somehow created the 15,500 square foot Lead Seam.

40. EnerSys contracted environmental consultant Shield Environmental Associates to review historical information and assess the factual basis for Chubb's denial. In a February 9, 2022 report (*see* Exhibit B), Shield made the following key determinations and observations, which EnerSys summarized in a February 15, 2022 response to Chubb (*see* Exhibit C):

   a. H.K. Porter's manufacture of brake parts was far less likely to have caused the Lead Seam than Exide's lead-intensive battery-manufacturing operations.

   b. Aerial photographs indicate the Lead Seam post-dated H.K. Porter's tenure on the Site, and thus the ACM Pit and the Lead Seam were not created around the same time.

   c. The ACM Pit was over 100 feet away, and in some areas downgradient, from the Lead Seam.

   d. The lead concentration in the ACM Pit was orders of magnitude less than that in the Lead Seam.

41. Chubb responded on March 23, 2022. (*See* Exhibit D).

42. Chubb disputed the age of the Lead Seam, reiterating its belief that it was created around the time of the ACM Pit – i.e., by H.K. Porter. But Chubb did not address Shield's conclusion that lead-battery manufacturing was more likely to cause lead contamination than H.K. Porter's manufacturing of brake parts, nor did it address the clear evidence of the aerial photographs showing when the Lead Seam area was created.

43. Even if the two contaminated areas were both created by H.K. Porter, Chubb did not explain how this "fact" makes the Lead Seam "associated with" the ACM Pit under the Policy.

44. Chubb also disputed the purported location of the ACM Pit, but it did not offer any evidence of its "true" location, nor did it address how the ACM Pit could have created the Lead Seam.

## COUNT I – BREACH OF CONTRACT

45. Paragraphs 1 through 44 are incorporated as if fully set forth herein.

46. The Policy is an enforceable contract between EnerSys and Chubb.

47. By denying EnerSys' claim with no basis, Chubb has breached the terms of the Policy.

48. Chubb has not satisfied its burden under Pennsylvania law to prove that the Lead Seam is "associated with" the ACM Pit such that the Policy does not cover costs to remediate the Lead Seam.

49. The distant, upgradient, 15,500-square-foot, higher-concentration Lead Seam could not have emanated from the 100-square-foot ACM Pit —and Chubb has not proven otherwise.

50. Chubb's contention that "associated with" the ACM Pit means all contamination on the Site created at the same time as the ACM Pit is without reason. This interpretation effectively rewrites the Policy to exclude all contamination "associated with" H.K. Porter.

51. The Policy intended only to exclude from coverage the 100-square-foot ACM Pit—not any and all contamination that H.K. Porter was responsible for at the Site.

52. Further, exclusions and limitations must be construed narrowly so as to give effect to the underlying policy.

53. Accordingly, by refusing to cover the costs of investigating and remediating the Lead Seam, Chubb breached the terms of the Policy by failing to reimburse Chubb for the costs of remediating the Lead Seam.

54. As a result of Chubb's breach, EnerSys has suffered damages in the approximate amount of $1.4 million.

**WHEREFORE**, EnerSys prays that the Court enter judgment in its favor and against Chubb for damages according to proof, interest thereon, and for all such other and further relief as the Court deems appropriate.

## COUNT II – BAD FAITH

55. Paragraphs 1 through 54 are incorporated as is fully set forth herein.

56. Chubb's conduct qualifies as bad faith under 42 Pa.C.S.A. § 8371.

57. Chubb's interpretation of the meaning of the term "associated with" is contrary to any rational or logical interpretation or definition of the term and fails to provide a good faith basis upon which to deny EnerSys' claim.

58. Chubb has attempted to expand one discrete exclusion concerning a 100-square-foot contamination pit created by H.K. Porter to effectively exclude from coverage all historic contamination created by H.K. Porter.

59. Chubb's factual claim that the small ACM Pit caused the large Lead Seam is not supported by any available evidence and thus additionally fails to provide a good faith basis upon which to deny EnerSys' claim.

60. The 100-square-foot ACM Pit could not have created the distant, upgradient, 15,500-square-foot, higher-concentration Lead Seam. Chubb's conclusion to the contrary quite literally makes a mountain of a molehill.

61. Chubb has not even attempted to prove this conclusion, although it is Chubb's duty under Pennsylvania law to do so.

62. Accordingly, Chubb has acted in bad faith by denying coverage in this matter.

**WHEREFORE**, EnerSys prays that the Court enter judgment in its favor and against Chubb for damages according to proof, interest thereon, punitive damages, court costs, attorney's fees, and such other and further relief, as the Court shall deem just and proper.

Respectfully submitted,

/s/ Shoshana Schiller
Shoshana (Suzanne Ilene) Schiller
(PA ID No. 68206)
Brandon Matsnev
(PA ID No. 325924)
401 City Avenue, Suite 901
Bala Cynwyd, PA 19004
(484) 430-2354
SSchiller@mankogold.com

*Attorneys for Plaintiff
EnerSys Delaware Inc.*

Dated: July 13, 2022